909 F.2d 1486
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Eugene WIGGINS, also known as Turk, Defendant-Appellant.
 No. 89-2841.
 United States Court of Appeals, Seventh Circuit.
 Submitted May 4, 1990.*
Decided Aug. 1, 1990.
 
 Before BAUER, Chief Judge, and EASTERBROOK, Circuit Judge, and PELL, Senior Circuit Judge.
 
 ORDER
 
 1
 Eugene Wiggins appeals his conviction of four counts of distributing cocaine in violation of 21 U.S.C. Sec. 841(a)(1). After a jury trial, Wiggins received four concurrent sentences of ten months in prison and a five-year term of supervised release.
 
 
 2
 Wiggins, employed by the United States Postal Service, sold cocaine four times to Deborah M. Brown (who was working undercover at the same post office as Wiggins) and L.A. Armstrong, a postal inspector. The first sale occurred on September 17, 1988, and the last on November 2, 1988. Wiggins raises the following issues on appeal.
 
 A. Failure to Dismiss Potential Juror
 
 3
 During voir dire, the district court judge recognized a potential juror that he had dismissed for cause in an earlier trial.[1] After a discussion with the prospective juror, the judge pronounced him "fair and impartial," and would not excuse him for cause when requested to do so by defense counsel. Counsel used a peremptory challenge instead.
 
 
 4
 Wiggins' counsel, deeming the jury box "a holy place," cites one case in support of the argument that the judge "erred" in forcing Wiggins to use a peremptory challenge. He does not specify how Wiggins was harmed (e.g., whether that peremptory challenge was Wiggins' last) or how the trial was subsequently tainted. The United States Attorney responds with a sixth amendment analysis, but that was not raised. We consider the issue waived as inadequately briefed. Bob Willow Motors, Inc. v. General Motors Corp., 872 F.2d 788, 795 (7th Cir.1989).
 
 
 5
 B. Denial of Motions for Judgment of Acquittal and New Trial
 
 
 6
 Wiggins moved for a judgment of acquittal pursuant to Fed.R.Crim.P. 29(a) at the end of the prosecution's case. Wiggins claimed to be entrapped and moved the court for a judgment of acquittal based on the government's failure to prove that he had the predisposition to sell cocaine. The judge denied the motion, Wiggins presented his defense, and again moved for acquittal at the close of evidence, Fed.R.Crim.P. 29(a), and after the verdict. Fed.R.Crim.P. 29(c).
 
 
 7
 Since Wiggins put on a defense, the district court's first denial of the motion is not before this court. United States v. Bardsley, 874 F.2d 1024, 1028 n. 3 (7th Cir.1989) (argument that district court improperly denied motion for acquittal "effectively waived when Bardsley presented his own evidence") (citations omitted). We review the latter two motions for acquittal to determine " 'whether at the time of the motion[s] there was relevant evidence from which the jury could reasonably find [the defendant] guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the Government....' " United States v. Studley, 892 F.2d 518, 526 (7th Cir.1989) (quoting United States v. Marquardt, 786 F.2d 771, 780 (7th Cir.1986)). Since Wiggins conceded that he delivered the cocaine to Brown and Armstrong, the issue is whether the evidence, read in the most favorable light to the government, shows that Wiggins was not entrapped.
 
 
 8
 "A valid entrapment defense is comprised of two elements: government inducement of a crime, and a lack of predisposition on the part of the defendant to engage in criminal conduct." United States v. Sababu, 891 F.2d 1308, 1332 (7th Cir.1989) (citations omitted). Wiggins concentrates only on predisposition, while the government alleges that there was no inducement.
 
 
 9
 In establishing inducement, "the defendant must put forth evidence showing that he or she would not have committed the crime had the particular attraction or lure that the government held out not existed." United States v. Marren, 890 F.2d 924, 931 (7th Cir.1989). In this case, the "lure" or "attraction" was Deborah Brown. Brown admitted that she asked Wiggins to get her some coke for her "boyfriend" (Armstrong). Wiggins claims that Brown flirted with him, and more, which Brown denied. She described their relationship as that "working companion[s]." In the light most favorable to the government, the evidence reveals that Brown asked Wiggins to obtain cocaine without Wiggins' intimation that he could or would do such a thing; the evidence is sufficient to show inducement.
 
 
 10
 A defendant is predisposed if he is " ' "ready and willing to commit an offense apart from government encouragement, and not an innocent person in whose mind the government implanted a disposition to commit an offense." ' " United States v. Lazcano, 881 F.2d 402, 406 (7th Cir.1989) (quoting United States v. Hawkins, 823 F.2d 1020, 1024 (7th Cir.1987) (additional quotation omitted))). We examine five elements to determine predisposition:
 
 
 11
 (1) the character or reputation of the defendant; (2) whether the suggestion of the criminal activity was originally made by the government; (3) whether the defendant was engaged in criminal activity for a profit; (4) whether the defendant evidenced reluctance to commit the offense, overcome by government persuasion; and (5) the nature of the inducement or persuasion offered by the government.
 
 
 12
 Id.
 
 
 13
 Very little evidence of Wiggins' character or reputation was introduced. Wiggins worked at the post office for nearly ten years and had received in-patient substance abuse treatment in 1986 through an employee assistance program.
 
 
 14
 Brown admitted that she first requested that Wiggins obtain cocaine in a phone conversation on September 17, 1988.[2] Brown averred that prior to that phone call, her conversations with Wiggins at work had never touched upon drugs.
 
 
 15
 Wiggins testified that after he told Brown over the phone that he was "doing a few lines," he "asked her did she want to come out to the motel?" Wiggins claimed, however, that Brown first asked him if he could get her some cocaine prior to the phone call, in a conversation at the post office. Viewed in the light most favorable to the prosecution, this evidence, particularly Wiggins' admission that he asked Brown to join him at the motel immediately after he told her that he was "doing lines," indicates an offer to share (i.e., deliver) cocaine with Brown prior to her request for cocaine.
 
 
 16
 Concerning the monetary gain factor, L.A. Armstrong testified that Wiggins accepted extra money ($25 to $50) offered to him by Armstrong. Armstrong also asserted that he gave Wiggins the extra money before Wiggins left to get the cocaine. Wiggins counters that the fact that he accepted, but did not demand or even request, money does not show that he delivered the cocaine for profit. Wiggins' acceptance of the cash suffices to show a profit motive.
 
 
 17
 Regarding the last two factors, there was no evidence that Wiggins balked at delivering the controlled substance and was overcome by Brown's persuasion. We have held that this is "[t]he most important factor in determining a defendant's predisposition" to commit a crime. Marren, 890 F.2d at 930 (citing United States v. Perez-Leon, 757 F.2d 866, 871 (7th Cir.), cert. denied, 474 U.S. 831 (1985)). Wiggins attempted to show that Brown enticed him into getting the coke; he wanted to impress her.[3] Wiggins needed little, if any, persuading.
 
 
 18
 Wiggins next contends that "[t]he [g]overnment's case lacked any evidence to support the conclusion that Wiggins was predisposed to commit the offense of distribution of a controlled substance." Wiggins correctly asserts that " '[p]redisposition "refers to whether the defendant had a readiness or willingness to commit the offense charged...." ' " United States v. Shukitis, 877 F.2d 1322, 1331 (7th Cir.1989) (quoting United States. v. Perez-Leon, 757 F.2d 866, 871 (7th Cir.), cert. denied, 474 U.S. 831 (1985) (quoting United States v. Fields, 689 F.2d 122, 124 (7th Cir.), cert. denied, 459 U.S. 1089 (1982))) (emphasis added). Wiggins distinguishes between use of cocaine, which he admitted to in the past,[4] and delivering cocaine.
 
 
 19
 We think that is a distinction without a difference. Wiggins freely stated that he wanted to impress Brown and offered to get her cocaine as soon as she requested it. By his own testimony, he told her he "could get anything she wanted." Wiggins showed a "readiness and willingness," indeed an alacrity, to commit the crime of which he was convicted. The district court properly refused to grant Wiggins' motions for acquittal.
 
 
 20
 Wiggins also moved for a new trial pursuant to Fed.R.Crim.P. 33. We review the district court's denial of this motion for abuse of discretion. United States v. Thiel, 888 F.2d 1532, 1533 (7th Cir.1989) (per curiam); United States v. Kuzniar, 881 F.2d 466, 470 (7th Cir.1989). Since Wiggins based his motion for a new trial on the entrapment issue, which we have already analyzed, we hold that the district court did not abuse its discretion in denying the motion.
 
 
 21
 For the foregoing reasons, the conviction of Wiggins is
 
 
 22
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Rule 34(a), Fed.R.App.P.; Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 [1]
 The judge previously understood the juror "would judge the credibility of a ... law enforcement officer in a different manner because ... [of] [his] acquaintanceship with law enforcement officers and so forth." The juror stated that he had misunderstood the judge on the earlier voir dire, and that what he meant to say was that his familiarity with police officers would not interfere with his ability to judge a law enforcement officer's credibility
 
 
 [2]
 The first phone call, unlike others between Brown and Wiggins, was not recorded
 
 
 [3]
 Wiggins' alleged that Brown dated him after the first transaction, and the focus of an entrapment defense is on defendant's state of mind before the first illegal transaction. United States v. Fusko, 869 F.2d 1048, 1053 (7th Cir.1989)
 
 
 [4]
 Wiggins did not deny telling Brown that he was "doing a line" in the September 17, 1988 phone conversation, but denied that he was actually using cocaine at the time. He testified that he wanted to impress Brown, that she previously stated she considered him "cool," and that in their conversations at work prior to the phone call, she asked about drugs